IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CR-364-D

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>MICHAEL JACOBS, )<br>)<br>Defendant. ) | **ORDER** |

On April 30, 2020, Michael Jacobs ("Jacobs") moved for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239–41 (2018) (codified as amended as 18 U.S.C. § 3582) [D.E. 199] and filed a memorandum and medical records in support [D.E. 225, 227]. On September 3, 2020, the United States responded in opposition [D.E. 229]. On October 28, 2020, the court denied Jacobs's motion for failure to exhaust administrative remedies. See [D.E. 242]. On November 19, 2020, Jacobs filed a motion for reconsideration of this court's October 28, 2020 order [D.E. 243].[1] As explained below, the court grants Jacobs's motion for reconsideration and denies Jacobs's motion for compassionate release.

I.

On March 21, 2019, pursuant to a written plea agreement, Jacobs pleaded guilty to conspiracy to distribute and possess with the intent to distribute 100 kilograms or more of marijuana and 5 kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. See [D.E. 103]; [D.E.

---

[1] The court has considered Jacob's motion for reconsideration under the governing standard. See Fed. R. Civ. P. 59(e); Zinkand v. Brown, 478 F.3d 634, 637 (4th Cir. 2007); Bogart v. Chapell, 396 F.3d 548, 555 (4th Cir. 2005); Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 653 (4th Cir. 2002); Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998); Hughes v. Bedsole, 48 F.3d 1376, 1382 (4th Cir. 1995).

108] 4, 7. On June 24, 2019, the court held Jacobs's sentencing hearing, adopted the facts set forth in the Presentence Investigation Report ("PSR") [D.E. 137], and calculated Jacobs's total offense level to be 34, his criminal history category to be I, and his advisory guideline range to be 151 to 188 months' imprisonment. See [D.E. 147]; [D.E. 154] 1. After granting the government's downward departure motion and thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Jacobs to 120 months' imprisonment. See [D.E. 147]; [D.E. 154] 2. Jacobs did not appeal.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the

2

safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[2] Application note 2 states

---

[2] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) Medical Condition of the Defendant.—

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is—

    (I) suffering from a serious physical or medical condition,

    (II) suffering from a serious functional or cognitive impairment, or

    (III) experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence

---

percent of his or her term of imprisonment, whichever is less.

   (C) Family Circumstances.—

      (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

      (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

   (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

Case 5:18-cr-00364-D   Document 258   Filed 01/27/21   Page 4 of 7

reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See id. at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., id. at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

As for Jacobs's request for compassionate release, Jacobs contends that he has exhausted his administrative requirements. On May 7, 2020, Jacobs submitted a request for compassionate release to the BOP. See [D.E. 243, 243-2]. Over thirty days elapsed, and Jacobs alleges that the BOP has not responded to his request. See [D.E. 243] 2. The court assumes without deciding that Jacobs has exhausted his administrative remedies and addresses Jacobs's claim on the merits.

Jacobs seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Jacobs cites the COVID-19 pandemic, the fact that he has tested positive for COVID-19, his age, and his health conditions, including emphysema, congestive heart failure, other heart problems, and obesity. See [D.E. 199] 2; [D.E. 225]; [D.E. 227] 6, 11–14.[3] Jacobs also cites the conditions at FCI Butner, his rehabilitation efforts, his release plan, and that he has served over 20% of his sentence. See [D.E. 199] 2–4; [D.E. 227] 10–11, 17–21.

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant is "suffering from a serious physical or medical condition . . . from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). While Jacobs states that he

---

[3] BOP records indicate that Jacobs got COVID-19 in May 2020 and has recovered. See [D.E. 227-5] 2.

5

suffers from emphysema, congestive heart failure, other heart problems, and obesity, he has not demonstrated that he is not going to recover from these conditions or that they cannot be treated while Jacobs serves his sentence. Accordingly, reducing Jacobs's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Jacobs's health conditions, rehabilitation efforts, and release plan are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, the section 3553(a) factors counsel against reducing Jacobs's sentence. See United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Jacobs is 67 years old and engaged in very serious criminal behavior between at least October 2016 and June 2018. See PSR ¶¶ 16–26; [D.E. 1] 1–3. Jacobs was the leader of a drug trafficking organization and used his trucking business to smuggle massive quantities of cocaine and marijuana from Texas to locations throughout the United States. See PSR ¶¶ 16–26. Jacobs's criminal scheme ensnared numerous others, including co-conspirators David Jones and Daniel Majors, both of whom were prosecuted federally and received lengthy sentences. See id. ¶¶ 13–26. Ultimately, Jacobs was accountable for the distribution of 155 kilograms of cocaine and 18,143.6 kilograms of marijuana. See id. Nonetheless, Jacobs has taken some positive steps while incarcerated. See [D.E. 199] 2; [D.E. 227] 10–11. The court also has considered Jacobs's exposure to COVID-19, his health conditions, the conditions at FCI Butner, his release plan, and that he has served 20% of his sentence.

6

Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011). Having considered the entire record, the steps that the BOP has taken to address COVID-19 and treat Jacobs, the section 3553(a) factors, Jacobs's arguments, the government's persuasive response, and the need to punish Jacobs for his criminal behavior, to incapacitate Jacobs, to promote respect for the law, to deter others, and to protect society, the court declines to grant Jacobs's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished).

As for Jacobs's request for home confinement, Jacobs apparently seeks relief under the CARES Act. See [D.E. 227] 21–22. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). As such, the court dismisses Jacobs's request for home confinement.

II.

In sum, the court GRANTS Jacobs's motion for reconsideration [D.E. 243], DENIES Jacobs's motion for compassionate release [D.E. 199], and DISMISSES Jacobs's request for home confinement [D.E. 227].

SO ORDERED. This 27 day of January 2021.

JAMES C. DEVER III
United States District Judge